IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOVAE CORPORATE UNDERWRITING LIMITED, | : | CIVIL ACTION |
| | : | |
| | : | NO. 07-03986 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| ATLANTIC MUTUAL INSURANCE COMPANY, et al., | : | |
| | : | |
| Defendants. | : | |

**FILED**

MAY 1 4 2008

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

**MEMORANDUM**

Giles, J.                                                                                    May 13, 2008

**I. Introduction**

Before the court are three motions to dismiss Plaintiff Novae Corporate Underwriting

Ltd.'s ("Novae") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), brought

respectively by Defendants Re-Source America, Inc. ("Re-Source US"), Atlantic Mutual

Insurance Company ("Atlantic"), and Corning, Inc. ("Corning").  Plaintiff brings suit, on its own

behalf and on behalf of the underwriting members of Syndicate 1241 at Lloyd's of London for

the 2000 year of account as indemnitors of Barkin Construction Limited (collectively

"Underwriters"), against Defendants in an attempt to enforce a foreign judgment entered in a

court of the United Kingdom.

Count I of the Complaint seeks a declaration that Re-Source US must repay Underwriters

$615,284.49 plus costs and interest pursuant to Pennsylvania's Uniform Foreign Money

Judgment Recognition Act, 42 P.S. § 22003.  Count II seeks a declaration that Re-Source US

must repay Underwriters $615,284.49 plus costs and interest pursuant to Pennsylvania's Uniform

Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306.  Count III claims unjust enrichment

against all three defendants, asserting that when Underwriters allegedly paid damages to Re-Source US, Atlantic, and/or Corning on behalf of Barkin, a quasi-contractual relationship was created.

Defendants' motions to dismiss are herein each GRANTED for the reasons that follow. Defendants' overarching argument is that Plaintiff cannot enforce a foreign judgment against Defendants because they were not the corporate entities named in the UK judgment and were not parties to that suit. From the face of the UK judgment, the court concludes that Plaintiff cannot enforce it against Defendants not named therein.

## II.  Factual Background

In considering Defendants' motion to dismiss, the court accepts all of Plaintiff's allegations as true and draws all reasonable inferences therefrom in its favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). The following assertions of fact are derived from the Complaint. Plaintiff Underwriters, citizens of the United Kingdom, insured Barkin Construction Limited ("Barkin"). (Compl. ¶ 4.) Plaintiff brings suit against Re-Source US, both in its own name and as the parent company of Re-Source America International Limited ("Re-Source UK"). (Compl. 1.)

Re-Source US is a Pennsylvania corporation that was in the business of recapturing and refurbishing optical fiber packing materials. (Compl. ¶¶ 2(a), 5.) Re-Source US created Re-Source UK as a subsidiary for the purpose of building a plant in England. (Compl. ¶¶ 5-6, 15.) Re-Source UK was duly incorporated in the United Kingdom. (Compl. ¶ 6.)

Re-Source US and Re-Source UK are both corporations, (Compl. ¶¶ 5-6), and, as such,

2

under law, they are separate legal entities. The Complaint does not include any pleading regarding a theory of piercing the corporate veil.

Plaintiff's pleadings are confusing in that in the body of the Complaint oftentimes no distinction is made between the parent company, Re-Source US, and its subsidiary, Re-Source UK. (See, e.g., Compl. 1 (referring to Re-Source US and Re-Source UK collectively as "Re-Source").) Nevertheless, where the Complaint refers only to "Re-Source," the court has assumed that the allegation refers both to Re-Source US and Re-Source UK in their separate corporate capacities.

Defendant Atlantic insured "Re-Source," and Defendant Corning was a principal client of "Re-Source." (Compl. ¶¶ 8, 10.) On June 9, 2000, Corning and "Re-Source" entered into contract. (Compl. ¶ 12.) Under the contract, "Re-Source" agreed to refurbish Corning fiber packaging units, and to defend and indemnify Corning for losses under the contract. (Compl. ¶¶ 13-14.) Re-Source UK opened a plant in North Wales in the United Kingdom on property owned by Monde Developments Ltd. ("Monde") and licensed to Re-Source UK. (Compl. ¶¶ 16-17.)

In 2000, Monde undertook construction work at the plant and hired Barkin as its main contractor. (Compl. ¶¶ 18-19.) Barkin hired various subcontractors, including Henry Smith Construction Engineers, Ltd. ("Smith"). (Compl. ¶ 20.) Smith subcontracted with Platt Site Safety Services Limited ("Platt"). (Compl. ¶ 21.) Barkin agreed to indemnify Platt for damage to tenants' stock, including Re-Source UK's. (Compl. ¶ 22.)

On May 15, 2001, a fire at the plant, allegedly caused by Platt's negligent hotwork, damaged the property of "Re-Source" and Corning, at a loss of over £ 1 million. (Compl. ¶¶ 23-27.) Corning's damages were paid by Atlantic ("Re-Source's" insurer) and/or "Re-Source," due

3

to "Re-Source's" agreement to indemnify Corning for losses under their contract. (Compl. ¶¶ 14, 28-29.)  On October 9, 2001, Re-Source UK sued Platt in a UK court.  (Compl. ¶ 30.)  Platt impleaded Barkin as a third party defendant, due to Barkin's agreement to indemnify Platt. (Compl. ¶¶ 22, 31.)  A UK court found that Platt was liable, ruled that Barkin was obligated to indemnify Platt fully, and ordered Barkin to pay Re-Source UK over $1.5 million.  (Compl. ¶¶ 32-34.)

Barkin appealed this decision.  (Compl. ¶ 35.)  While the appeal was pending, the Underwriters paid the judgment on behalf of Barkin.  (Compl. ¶ 36.)  The Underwriters paid these damages to "Re-Source," Atlantic, and/or Corning on behalf of Barkin.  (Compl. ¶¶ 63, 66.)  Also, while the appeal was pending, Re-Source UK was dissolved and all of its assets transferred to Re-Source US and/or its principal, Michael Grey.  (Compl. ¶¶ 7, 37.)

On February 8, 2005, the UK appeals court reversed the prior decision on damages and ordered Re-Source UK to reimburse Barkin $615,284.49 plus costs and interest.[1]  (Compl. ¶¶ 3, 11, 36 [second],[2] Ex. M, Ex. Q at ¶¶ 1-4.)  The UK judgment also stated that, in the event that Re-Source UK failed to pay sums for which it was liable, Barkin had the right to apply to the UK Technology and Construction Court.  (Compl., Ex. Q at ¶ 4.)  Barkin demanded re-payment from "Re-Source," but "Re-Source" did not respond to Barkin's demand for repayment.  (Compl. ¶¶ 11, 37 [second]-38.)

_____

[1] Although the Complaint sometimes states that the UK judgment was against Re-Source UK, (Compl. ¶¶ 3, 11), it repeatedly states that the UK judgment was against "Re-Source," (Compl. ¶¶ 36 [second], 41-46, 48-50, 52, 57).  The UK judgment is against Re-Source UK only, and not Re-Source US. (Compl., Ex. Q at ¶¶ 1-4.)  Plaintiff is charged with this knowledge, and the Complaint must be construed consistent with the face of the UK judgment.

[2] The Complaint includes a typographical error, repeating paragraphs 36 and 37 twice.

4

On July 27, 2007, the Underwriters filed a Praecipe to Transfer Judgment against Re-Source UK for $615,284.49 plus costs and interest in the Philadelphia Court of Common Pleas. (Compl. ¶ 39.)  Although Re-Source US, Corning, and Atlantic are not named in the UK judgment, the Underwriters, nevertheless, named them in the Praecipe.  (Compl., Ex. Q at ¶¶ 1-4, Ex. S.)  On September 24, 2007, Underwriters filed the present action in this court, based on diversity jurisdiction, 28 U.S.C. § 1332.  (Compl. ¶ 1.)  Defendants do not contest the court's jurisdiction.

### III.  Legal Standard for Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (stating that this statement of the Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)); see id. at 231 (stating that Twombly does not undermine the principle that the court must accept all of plaintiff's allegations as true and draw all reasonable inferences therefrom).  To withstand a motion to dismiss under Rule 12(b)(6), "'[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 234 (quoting Twombly, 127 S. Ct. at 1965).  Thus, "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element."  Id. (quoting Twombly, 127 S. Ct. at 1965); see Wilkerson v. New Media Tech. Charter Sch., Inc.,

No. 07-1305, 2008 U.S. App. LEXIS 7526, at *13 (3d Cir. Apr. 9, 2008) (following Phillips).

This standard "simply calls for enough facts to raise a reasonable expectation that discovery will

reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (quoting Twombly, 127 S.

Ct. at 1965) (quotations omitted).

When deciding a motion to dismiss under Rule 12(b)(6), a court may properly consider

the factual allegations contained in the complaint, exhibits attached thereto, documents

referenced therein, matters of public record, and undisputedly authentic documents attached as

exhibits to the defendant's motion to dismiss if the plaintiff's claims are based on those

documents. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d

Cir. 1993), cert. denied, 510 U.S. 1042 (1994).

## IV.  Discussion

### A.    Count I Fails to State a Claim For Which Relief Can Be Granted.

Re-Source US argues that Pennsylvania law only authorizes the transfer and enforcement

of judgment against the actual party named in the judgment.  Pennsylvania's Uniform Foreign

Money Judgment Recognition Act, 42 P.S. § 22003, upon which Count I relies, provides:

> Except as provided in sections 4 and 5, a foreign judgment meeting the
> requirements of section 9 is conclusive *between the parties* to the extent that it
> grants or denies recovery of a sum of money. The foreign judgment is enforceable
> in the same manner as the judgment of another state which is entitled to full faith
> and credit.

42 P.S. § 22003 (emphasis added).[3]

---

[3] Section 4 provides that a foreign judgment need not be recognized if defendant did not
receive sufficient notice to defend, the judgment was obtained by fraud, its basis is repugnant to

By its express terms, Section 22003 applies only as between the identical parties to the judgment which transfer and enforcement is sought. See id.; Bolanos v. Gulf Oil Corp., 502 F. Supp. 689, 693 (W.D. Pa. 1980) ("[A] valid judgment obtained in a foreign nation will be recognized in the United States as far as the *immediate parties* are concerned." (emphasis added)), aff'd w/out op., 681 F.2d 804 (3d Cir. 1981).  As Defendant correctly argues, the statute does not provide any authority to enter judgment against an entity that was not named in the foreign country judgment.

The statute's plain language, 42 P.S. §§ 22005(2) and (3), provides that a foreign country judgment cannot be recognized if the foreign tribunal lacked jurisdiction over the person against whom the judgment would be enforced or the subject matter of the claim.  42 P.S. §§ 22005(2) & (3).  Moreover, 42 P.S. § 22004 provides that a foreign country judgment need not be recognized if the defendant in the foreign court proceedings did not receive sufficient notice of the proceedings to enable him to defend.  42 P.S. § 22004(1).  If both notice and jurisdiction over a defendant is required for a foreign country judgment to be recognized, it follows that the defendant must be named in the judgment sought to be enforced.

Despite Plaintiff's misleading pleading that the UK court ordered "Re-Source," collectively referring to Re-Source US and Re-Source UK, to reimburse Barkin, (Compl. ¶ 36 [second]), it is clear from the judgment itself that only Re-Source UK is named, (Compl., Ex. M, Ex. Q at ¶¶ 1-4).  As Defendant correctly points out, Re-Source US's mere parent corporation

_____

public policy, it conflicts with another final judgment, the proceeding was contrary to an agreement between the parties, and, in personal jurisdiction cases, the foreign court was a seriously inconvenient forum.  42 P.S. § 22004.  Section 5 defines nonconclusive judgments.  42 P.S. § 22005.  Section 9 requires that the judgment be final, conclusive, and enforceable where rendered, regardless of whether an appeal is pending.  42 P.S. § 22009.

status does not impose any liability upon it and Plaintiff does not allege any factual or legal basis for the position that Re-Source US should be held liable for its subsidiary corporation's obligations.  See, e.g., Lumax Indus. v. Aultman, 669 A.2d 893, 895 (Pa. 1995) (noting that there is a "strong presumption" against piercing the corporate veil, stating the general rule that "a corporation shall be regarded as an independent entity even if its stock is owned entirely by one person," and providing factors used in determining whether to pierce the corporate veil). Plaintiff's assertions found in its response to the motion to dismiss to the effect that Re-Source US and Re-Source UK are one and the same company and that profits from both flow directly into the pockets of the same principal does not overcome this critical deficiency in its pleadings. (See Pl.'s Mem. of Law in Opp. to Def. Re-Source US's Mot. to Dismiss 6, 8.)  Even if Re-Source US may have been aware of the UK suit and participated in it to a certain extent, such as providing testifying witnesses, as Plaintiff argues, that would not make Re-Source US a party to the suit and would not change the court's legal analysis.  (See Pl.'s Mem. of Law in Opp. to Def. Re-Source US's Mot. to Dismiss 7.)

Moreover, basic principles of comity require that this court not engage in relitigating the UK action or delve into that foreign action's underlying merits.  Cf. Tronagun Corp. v. Mizerock, 820 F. Supp. 225, 227 (W.D. Pa. 1993) (holding that the analogous 42 Pa.C.S. § 4306 is procedural in nature and does not empower Pennsylvania to re-open the sister-state judgment). The scope of the UK court's judgment must be left to that jurisdiction to resolve.  Further, the UK judgment specified that, in the event that Re-Source UK failed to pay sums for which it was liable, Barkin had the right to apply to the UK Technology and Construction Court.  (Compl., Ex. Q at ¶ 4.)  To the extent that Plaintiff challenges Re-Source UK's dissolution, which would have

taken place pursuant to English law because Re-Source UK was incorporated in the United

Kingdom, such challenge cannot take place in this court. This court is not the Queen's Bench.

Consistent with Pennsylvania's Uniform Foreign Money Judgment Recognition Act, this court

must take the UK judgment on its face. Cf. ERBE Elektromedizin GmbH v. Canady, Civ.

Action No. 07-384, 2008 U.S. Dist. LEXIS 12250, at *8 (W.D. Pa. Feb. 19, 2008) ("[F]ederal

courts have consistently held that the English court system provides an impartial tribunal and

procedures that comport with due process.").

  Because Re-Source US and Re-Source UK are separate entities and the UK judgment

sought to be enforced here is only against Re-Source UK and does not name Defendant Re-

Source US, Count I fails to state a claim for which relief can be granted.


**B.** **Count II Fails to State a Claim For Which Relief Can Be Granted.**

  Pennsylvania's Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S. § 4306, upon

which Count II relies, provides in relevant part:

> (b) FILING AND STATUS OF FOREIGN JUDGMENTS.-- A copy of any
> foreign judgment including the docket entries incidental thereto authenticated in
> accordance with act of Congress or this title may be filed in the office of the clerk
> of any court of common pleas of this Commonwealth. The clerk shall treat the
> foreign judgment in the same manner as a judgment of any court of common pleas
> of this Commonwealth. A judgment so filed shall be a lien as of the date of filing
> and shall have the same effect and be subject to the same procedures, defenses and
> proceedings for reopening, vacating, or staying as a judgment of any court of
> common pleas of this Commonwealth and may be enforced or satisfied in like manner.
> . . .

> (f) DEFINITION.-- As used in this section "foreign judgment" means any
> judgment, decree, or order of a court *of the United States* or of any other court
> requiring the payment of money *which is entitled to full faith and credit* in this
> Commonwealth.

42 Pa.C.S. §§ 4306(b) & (f) (emphasis added).

For the same reason that 42 P.S. § 22003 does not apply, 42 Pa.C.S. § 4306 does not provide authority for enforcement of the UK judgment.  Re-Source US is not named in the UK judgment.

Defendant also argues that 42 Pa.C.S. § 4306 only applies to sister-state judgments and not to judgments obtained in foreign countries.  The express language of Section 4306(f), quoted above, requires this conclusion.  The Full Faith and Credit Clause of the U.S. Constitution, U.S. Const. art. 4, § 1, requires state courts to recognize and enforce the judgments of sister states, but "does not extend to judgments of foreign nations." Hilkmann v. Hilkmann, 858 A.2d 58, 65 (Pa. 2004); see Somportex, Ltd. v. Phila. Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971) ("Pennsylvania distinguishes between judgments obtained in the courts of her sister states, which are entitled to full faith and credit, and those of foreign courts, which are subject to principles of comity.").  Because foreign country judgments, like the one at issue here, are not entitled to full faith and credit, they are not included within the class of "foreign judgments" under Section 4306(f).  In contrast, the Uniform Foreign Money Judgment Recognition Act of 1962, of which Pennsylvania adopted its own version in 1990, "was an attempt to codify common law principles related to recognition of foreign [nation] judgments." Soc'y of Lloyd's v. Mullin, 255 F. Supp. 2d 468, 474-75 (E.D. Pa. 2003) (citing Jay M. Zitter, Annotation, Construction and Application of Uniform Money Judgments Recognition Act, 88 A.L.R. 5th 545 (2001)).

For these reasons, Count II fails to state a claim for which relief can be granted.

**C.   Count III Fails to State a Claim For Which Relief Can Be Granted.**

In Count III, in support of its claim for unjust enrichment, Plaintiff alleges that "[w]hen Underwriters paid [damages under the UK judgment] to ["Re-Source,"] Atlantic and/or Corning . . . on behalf of Barkin, a quasi-contractual relationship between Underwriters, ["Re-Source,"] Atlantic and/or Corning was created." (Compl. ¶ 63.) Defendants correctly argue that the nature of a judgment and the obligation it imposes is not quasi-contractual, nor do its obligations extend to those not named in the judgment.

"Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred." Mitchell v. Moore, 729 A.2d 1200, 1203 (Pa. Super. Ct. 1999) (citation omitted). Under Pennsylvania law, the following elements are necessary to prove unjust enrichment:

> (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. (citations omitted). The application of the doctrine depends on the particular factual circumstances of the case at issue. In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.

Id. at 1203-04.

First, Plaintiff has not alleged that it conferred a benefit on Defendants, nor has Plaintiff properly alleged that any of the three named Defendants directly received any portion of the Underwriters' payment to Re-Source UK. Instead, Plaintiff claims that the UK judgment "placed upon Underwriters the legal obligation to pay Re-Source, Atlantic and/or Corning damages on behalf of Barkin" and that the "Underwriters paid these damages to Re-Source, Atlantic and/or Corning." (Compl. ¶¶ 62-63.) However, it is clear from the UK judgment itself, which is

11

attached to the Complaint, that the UK judgment was only rendered against Re-Source UK and, thus, placed upon the Underwriters the legal obligation to pay only Re-Source UK. (Compl., Ex. M, Ex. Q at ¶¶ 1-4.)

Although the court interprets the Complaint in the light most favorable to Plaintiff, in light of the UK judgment against Re-Source UK only, Plaintiff's allegation that it paid damages to Re-Source US, Atlantic and/or Corning is so bereft of alleged evidence of actual payment to Defendants that the Complaint in this respect does not rise "above the speculative level." See Phillips, 515 F.3d at 234 (quoting Twombly, 127 S. Ct. at 1965). Indeed, it is likely improbable that the Underwriters directly paid the UK judgment amount to any entity other than Re-Source UK. At odds with the pleadings of its Complaint, Plaintiff, in response to the motions to dismiss, asserts that the UK court ordered Barkin to pay damages to Re-Source UK and that the Underwriters "made that payment on behalf of Barkin to Re-Source UK which *in turn* made payments to Re-Source US, Corning and/or Atlantic." (See, e.g., Pl.'s Mem. of Law in Opp. to Def. Re-Source US's Mot. to Dismiss 4-5 (emphasis added); but see Pl.'s Mem. of Law in Opp. to Def. Corning's Mot. to Dismiss 7 ("[I]t appears that the vast majority of any award went directly into Corning's pocket . . . , it follows that Corning was also overpaid."); Pl.'s Mem. of Law in Opp. to Def. Atlantic's Mot. to Dismiss 7 ("Underwriters paid damages to Atlantic on behalf of Barkin in accordance with the [UK order].").)

Second, even if a benefit were conferred, retention of payment by any Defendant received from its contractual counterparty is not unjust. A third party benefit, without some injustice, is not enough to support an unjust enrichment claim. In its Complaint, Plaintiff does not allege that any Defendant took any action, fraudulent or otherwise, to instigate the Underwriters' payment of

the judgment prior to resolution of the UK appeal.

Plaintiff's claim for unjust enrichment is controlled by the Restatement of Restitution §
110, which provides:

> A person who has conferred a benefit upon another as the performance of a
> contract with a third person is not entitled to restitution from the other merely
> because of the failure of performance by the third person.

Restatement (First) of Restitution, § 110 (1937); see D.A. Hill Co. v. CleveTrust Realty
Investors, 573 A.2d 1005, 1009 (Pa. 1990) (following Section 110 of the Restatement in
determining unjust enrichment and stating that "*in the absence of some misleading by the third
party*, the mere failure of performance by one of the contracting parties does not give rise to a
right of restitution against the third party" (emphasis added) (quoting Meehan v. Cheltenham
Twp., 189 A.2d 593, 596 (Pa. 1963))).  This principle is illustrated in "the situation where A
purchases a ring from C, a jeweler, for his fiancee B and then defaults in the payments.  The
Restatement states that C cannot recover the ring or its value from B." D.A. Hill, 573 A.2d at
1009 (quoting Meehan, 189 A.2d at 596) (citing Restatement (First) of Restitution, § 110 cmt. a,
illus. 2).  Plaintiff cites cases for the proposition that a plaintiff need not directly confer benefits
on a defendant to state an unjust enrichment claim, but those cases do not involve a third party
benefit and/or involve deceptive and inequitable conduct, and thus are inapposite.  (See, e.g.,
Pl.'s Mem. of Law in Opp. to Def. Re-Source US's Mot. to Dismiss 10-11 (citing Baker v.
Family Credit Counseling Corp., 440 F. Supp. 2d 392, 420 (E.D. Pa. 2006); Northeast Fence &
Iron Works, Inc. v. Murphy Quigley Co., 933 A.2d 664, 668 (Pa. Super. Ct. 2007)).)

Therefore, based on Plaintiff's own pleadings, even if a benefit was conferred upon
Defendants, it was not one that was caused by any actions, misleading or otherwise, of any

Defendant.  Even if Defendants, as alleged third party beneficiaries of the UK judgment, benefitted indirectly from Plaintiff's payment to Re-Source UK, simply because Re-Source UK failed to reimburse the money to Barkin did not give rise to a claim of unjust enrichment or right of restitution against Defendants.  There is a presumption of regularity in the way in which Re-Source UK was dissolved under UK law and, to the extent that Plaintiff seeks to challenge that dissolution, such challenge must be brought before an appropriate UK court.  This court has no jurisdiction over such a challenge.  Plaintiff is not entitled to further discovery on this issue, as it urges, because its unjust enrichment claims under Count III fail as a matter of law.

## V.  Conclusion

For the foregoing reasons, Defendants' motions to dismiss are granted.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NOVAE CORPORATE                      :      CIVIL ACTION
UNDERWRITING LIMITED,                :
                                     :      NO. 07-03986
          Plaintiff,                 :
                                     :
     v.                              :
                                     :                  FILED
ATLANTIC MUTUAL INSURANCE            :              MAY 1 4 2008
COMPANY, et al.,                     :
                                     :          MICHAEL E. KUNZ, Clerk
          Defendants.                :          By_____Dep. Clerk

**ORDER**

AND NOW, this 13th day of May, 2008, upon consideration of Defendant

Atlantic Mutual Insurance Company's Motion to Dismiss Plaintiff's Complaint (Doc. No. 8),

Defendant Corning, Inc.'s Motion to Dismiss Plaintiff's Complaint (Doc. No. 9), and Defendant

Re-Source America, Inc.'s Motion to Dismiss Plaintiff's Complaint (Doc. No. 10), all pursuant

to Fed. R. Civ. P. 12(b)(6), Plaintiff's Responses in opposition thereto, and Defendants' Replies,

it is hereby ORDERED that Defendants' motions to dismiss are each GRANTED for the reasons

set forth in the attached memorandum.

                    BY THE COURT:

                    _James T. Giles_

                    JAMES T. GILES          J.

mail :
     D Picker
     D. Fitzpatrick

mail :
     C Trockbery
     M. Yuller
     & McGuirk
     L Cosgrove
     Wm Firth